**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DOMONIC BLAIR,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.** |
| | § | |
| | § | |
| **GCLC SERVICES INC. & 4LOGIC LLC** | § | |
| **Defendants.** | § | **JURY DEMANDED** |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**DOMONIC BLAIR**, Plaintiff in the above numbered and styled cause, files his Original Complaint, complaining of **GCLC SERVICES INC. & 4LOGIC LLC,** Defendants herein, and in support thereof shows this Court as follows:

This is a suit in law and in equity, authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981 and the Texas Commission on Human Rights Act, Chapter 21 of the Texas Labor Code ("TCHRA"). The jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of rights secured by these laws protecting people such as the Plaintiff from employment discrimination and retaliation, including but not limited to termination and a hostile work environment, based on race, color and national origin (Black/African American) and retaliation.

## Venue

1. Venue is proper in the U.S. District Court for the Southern District of Texas, Houston Division. Venue in this Court is provided for in any district in which the private employer of the person maintains a place of business pursuant to 28 U.S.C. § 1391(b). A substantial part, if not all, of the cause of action accrued or arose in the Southern District of Texas. Defendants maintain sufficient business contacts within a county in the Houston Division. Furthermore, the Plaintiff resided within the Houston Division during the pertinent time-period in question.

## Parties

2. Domonic Blair ("Blair", Black/African American) is a United States citizen and was residing in Texas during the relevant time-period of his claims. At all times material hereto, Blair was an employee of Defendants, as understood and defined by Title VII, 42 U.S.C. §1981 and the TCHRA.

3. Defendant GCLC Services Inc. is a corporation. It may be served with this lawsuit by serving its registered agent for service of process, Ruben Hinojosa, 563 West Bay Area Blvd., Suite 136, Webster, TX 77598. At all times material hereto, Defendant was Blair's employer, as understood and defined by Title VII, 42 U.S.C. §1981 and the TCHRA.

4. Defendant 4Logic LLC is a corporation. It may be served with this lawsuit by serving its registered agent for service of process, Ye Sun, 1875 Post Oak Park Dr., Apt. #540, Houston, TX 77027. At all times material hereto, Defendant

was Blair's employer, as understood and defined by Title VII, 42 U.S.C. §1981 and the TCHRA.

**Facts**[1]

5. Mr. Domonic Blair (Hereafter, "Blair") began his employment with the Defendants on or about March 25, 2024, as a Warehouse Associate/Order Picker. At all relevant times of Blair's employment with the Defendants he held the position of Warehouse Associate/Order Picker.

6. On or about April 15, 2024, the owner of 4Logic, Calvin Sun (Asian) noticed that a laptop was missing, after allegedly investigating and reviewing the cameras.

7. Monica Triplett (Manager at GCLC Services Inc., White/Caucasian) stated to the EEOC that, "The client customer of GCLC Services, Inc., 4Logic, contacted me, Monica Triplett on Monday, April 15, 2024, at 4:30 pm to report that our employee, Domonica Blair had stolen a laptop from their warehouse. I contacted Mr. Blair and asked him about the charges. He denied any wrongdoing…"

8. On or about April 15, 2024, at 4:12 pm, Ms. Triplett texted Blair asking him if he knew Dontravius "Redd" Johnson (Black/African American) which was another employee that was working the previous day. Ms. Triplett then sent Blair another text stating that Mr. Sun was looking for Redd because something might be damaged and thought Blair might know something about the damage.

1 These facts are by no means exhaustive.

Approximately, 28 mins later, at 4:45 pm, Ms. Triplett texted Blair stating, "Bring me the laptop tomorrow morning and pick up your last check." Blair then called Ms. Triplett numerous times before she picked up, and once she did, Blair respond with, "Excuse me, what are you talking about?" Ms. Triplett then yelled at Blair stating, "They have you on the fucking camera Domonic, they have you on camera at 4:24, they have you in black and white, just bring me the laptop and pick up your fucking check!" Blair then told Ms. Triplett that he did not steal the laptop and cautioned her about threatening him over his compensation and job. Ms. Triplett replied, "It's not a threat. Bring me the laptop tomorrow or go see the video yourself." Ms. Triplett then told Blair, "How, they have you on fuckin camera picking the laptop up, shoving it in your pants and you walked out the building, do you want your fucking check huh, do you want your fuckin check?" Then, Ms. Triplett rudely hung up the phone on Blair and didn't pick up the phone after Blair called her back numerous times.

9. Also on April 15, 2024, after going to the main office of 4Logic, where a meeting was being held by Mr. Sun, with all the employees about the incident, Blair felt very uncomfortable because everyone was looking at him as if he stole the laptop. During this meeting Mr. Sun made Blair spell his name to him several times and then apologized because he had Blair's name mixed up with the person who stole the laptop, allegedly because their name looks the same and that they looked alike. The name of the employee who stole the laptop is Dontavious "Redd" Johnson. Blair then texted Ms. Triplett again saying you

have the wrong person, and then she texted Blair back saying, "Your right, I might be wrong... I will let you know if I owe you an apology....."

10. Ms. Triplett also stated to the EEOC that, “I again spoke with the client who assured me that it was indeed Mr. Blair, and they had him on video. I contacted Mr. Blair via text and told him to bring the stolen laptop back to my office and pick up his paycheck. Later in the evening, the client customer called me back to explain that they had made a mistake in identifying Mr. Blair as the wrong doer instead of another young man that they had just recently hired. I again contacted Mr. Blair and told him that I had made a horrible mistake and owed him a huge apology. Mr. Blair came to the GCLC Services office at 12515 Gulf Freeway in Houston on Monday morning whereby I gave him and honest and sincere apology.”

11. On or about April 16, 2024, at 7:33 am, Blair went to GCLC Services office since he never heard back from Ms. Triplett. When Blair walked into Ms. Triplett’s area of the office, Ms. Triplett greeted him by saying, "How can I help you, what’s your name." When Blair stated his name, Ms. Triplett’s eyes got big, she looked down at her desk and said, "I’m so sorry." Blair then asked Ms. Triplett if they could talk in private about the incident that took place the previous day. As Ms. Triplett walked to the front counter, she said they could talk at the counter because the other employees didn’t understand English. Ms. Triplett then profusely apologized to Blair. Ms. Triplett then proceeded to admit to threatening Blair regarding his paycheck, to cussing Blair out, and being unprofessional towards him. Then Ms. Triplett stated, "you didn’t do this, your

so right. I'm the one that did the worst thing possible, did that you know the...(dropped her voice in a low tone and with her hands gave a quote on quote signal) "Black thing"... you are so right, I'm that horrible person that I didn't think I was, and yesterday I proved to myself that I am that horrible person." After a few more minutes of talking, Blair asked Ms. Triplett for her business card and her boss/owner contact information. Blair then arrived to work and spoke to Mr. Sun, who let Blair know that Ms. Triplett came to his office, looked at his camera footage and said it was Blair who had stolen the laptop. During this conversation, Blair also told Mr. Sun the Mr. Triplett described her actions toward him as a "Black thing."

12. On or about April 16, 2024, at 1:06 pm, Blair called Ruben Hinojosa (Owner of GCLC Services, Hispanic/Caucasian) to let him know the situation and what had transpired with Ms. Triplett his employee, but Mr. Hinojosa didn't answer. Blair also texted Mr. Hinojosa, and he also did not respond to Blair's text message.

13. On or about April 29, 2024, at 12:05 pm, Blair called Mr. Hinojosa. Once again, Mr. Hinojosa did not answer or respond. Blair left him a voicemail, but he did not call Blair back.

14. On or about May 5, 2024, Blair and two other employees were working from noon to 4:00 pm. Mr. Sun told one of the new employees (Billy Sparks) that Blair stole a laptop from the company, and he had Blair on camera doing it.

15. In the meantime, after Blair continued to be falsely accused of stealing a laptop, Blair was subject to hostile work environment of harassment, being

micromanaged, excessively monitored and picked on. A full-time employee by the name of Irene (Hispanic) kept complaining about Blair. Mr. Sun would always take her side. Blair learned from his coworkers that Mr. Sun had told Irene to monitor Blair because he might steal again. Just like the other Black employees, Irene made Blair feel uncomfortable, trying to get him and the other Black employees fired.

16. Even with no A/C in the warehouse, Mr. Sun always only told the Black employees that they were moving to slow and to work harder. Mr. Sun did not treat his Hispanic/Caucasian and Asian employees in the negative hostile manner he treated his Black/African American employees.

17. On or about May 8, 2024, Blair found out from a coworker named Edut Morales that Ms. Triplett and Mr. Hinojosa were married for years.

18. On or about May 9, 2024, at 1:12 pm, Mr. Hinojosa and Blair had a 16-minute conversation. After Blair told Mr. Hinojosa that Ms. Triplett was racist and discriminated against him, Mr. Hinojosa automatically said, “Monica isn’t racist”, and that he had known her for over 10 years. Also Mr. Hinojosa claimed that he had no knowledge of the laptop stealing incident. Mr. Hinojosa then got off the phone with Blair saying that he will follow up with Ms. Triplett and that he would call Blair back. However, Mr. Hinojosa did never called Blair back, instead Blair was terminated approximately only two weeks after he made his complaint of race and color discrimination.

19. On or about May 15, 2024, Blair had a legal issue to take care of, and he took off from May 14, 2024, to May 17, 2024, so he could return to work on May 20, 2024. This time off was approved by Mr. Sun.

20. Blair in fact returned to work on May 20, 2024, and worked that day and on also on May 21, 2024.

21. On or about May 22, 2024, at 10:45 am, Mr. Sun came to Blair stating, "You haven't talked to Monica?' Blair responded with, "No, I haven't heard from her, why should I?" Mr. Sun then told Blair, "I ended your assignment on the Monday (which is the 20th) because of your work ethic." So, Blair then left the job site. To be clear, Blair did not quit, he was unlawfully terminated, motivated by his race/color/national origin and in retaliation for complaining about race and color discrimination.

22. Blair also filed a Charge of Discrimination with the EEOC against GCLC Services on or about May 31, 2024. This EEOC Charge was given the following identifier: EEOC Charge No. 460-2024-04939. The EEOC issued its Notice of Right to Sue for EEOC Charge No. 460-2024-04939 on June 20, 2025.

23. Blair also filed a Charge of Discrimination with the EEOC against 4Logic LLC on or about May 31, 2024. This EEOC Charge was given the following identifier: EEOC Charge No. 460-2024-06017. The EEOC issued its Notice of Right to Sue for EEOC Charge No. 460-2024-06017 on June 20, 2025.

24. Instead of addressing Blair's concerns of discrimination and retaliation from his internal complaints of discrimination, the Defendants embarked on a continuous campaign of sabotage against him as form of ongoing

discrimination and retaliation by subjecting him to disparate treatment in the terms and conditions of his employment and subjected him to a discriminatory and retaliatory hostile work environment, including but not limited to the failure to address Blair's complaints of discrimination, continuously attempting to set him up for failure on a daily/weekly basis with the goal of terminating his employment, excessively monitoring him, forcing him to report to the discriminatory and retaliatory management officials, threats of termination, constantly being talked down to and treated like less than an human being, treating him differently than his similarly situated coworkers, subjected to repeated false and unsubstantiated allegations, creating reputational harm and unlawfully terminating his employment on or about May 22, 2024.

25. The Defendants' unlawful and discriminatory practices toward Blair were intentional.

26. The Defendants' unlawful and discriminatory practices are willful and were done with malice or with reckless indifference for the federal and state protected rights of Blair.

## CAUSES OF ACTION

27. Plaintiff hereby incorporate all facts stated in the preceding paragraphs as if set forth fully herein.

**Race Discrimination, Color Discrimination and Retaliation under Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981**

28. Defendants have intentionally discriminated against Plaintiff based on his race and color (Black/African American), subjected Plaintiff to disparate treatment in the terms and conditions of his employment, subjected Plaintiff to a hostile

work environment and terminated Plaintiff due to his race and color in violation of 42 U.S.C. §1981.

29. Plaintiff opposed discriminatory conduct that was in violation of 42 U.S.C. §1981 and was subject to ever increasing retaliation from the Defendants thereafter. Specifically, he complained of race and color discrimination and was unlawfully terminated and subjected to an increasingly retaliatory hostile work environment shortly after he made his discrimination complaints.

30. As a result of Defendants' actions in violating provisions of 42 U.S.C. §1981 as described herein, Plaintiff has suffered and continues to suffer a loss of wages, benefits and other compensation due in the past and which will be suffered and due in the future.

31. As a result of Defendants' actions in violating provisions of 42 U.S.C. §1981 as described herein, Plaintiff has suffered from severe mental anguish.

**Race Discrimination, Color Discrimination, National Origin Discrimination and Retaliation under Title VII of the Civil Rights Act of 1964**

32. Defendants' intentional discrimination against Plaintiff was motivated by his race, color and national origin (Black/African American). Defendants subjected Plaintiff to disparate treatment in the terms and conditions of his employment, subjected Plaintiff to a hostile work environment and terminated Plaintiff, motivated by his race, color, national origin in violation of Title VII.

33. Plaintiff opposed discriminatory conduct that was in violation of Title VII and was subject to ever increasing retaliation from the Defendants thereafter. Specifically, he complained of race and color discrimination and was

unlawfully terminated and subjected to an increasingly retaliatory hostile work environment shortly after he made his discrimination complaints.

34. As a result of Defendants' actions in violating provisions of Title VII as described herein, Plaintiff has suffered and continues to suffer a loss of wages, benefits and other compensation due in the past and which will be suffered and due in the future.

35. As a result of Defendants' actions in violating provisions of Title VII as described herein, Plaintiff has suffered from severe mental anguish.

**Race Discrimination, Color Discrimination, National Origin Discrimination and Retaliation under Texas Commission on Human Rights Act ("TCHRA")**

36. Defendants' intentional discrimination against Plaintiff was motivated by his race, color and national origin (Black/African American). Defendants subjected Plaintiff to disparate treatment in the terms and conditions of his employment, subjected Plaintiff to a hostile work environment and terminated Plaintiff, motivated by his race, color, national origin in violation of the TCHRA.

37. Plaintiff opposed discriminatory conduct that was in violation of the TCHRA and was subject to ever increasing retaliation from the Defendants thereafter. Specifically, he complained of race and color discrimination and was unlawfully terminated and subjected to an increasingly retaliatory hostile work environment shortly after he made his discrimination complaints.

38. As a result of Defendants' actions in violating provisions of the TCHRA as described herein, Plaintiff has suffered and continues to suffer a loss of wages, benefits and other compensation due in the past and which will be suffered and

due in the future.

39. As a result of Defendants' actions in violating provisions of the TCHRA as described herein, Plaintiff has suffered from severe mental anguish.

## DAMAGES

40. Plaintiff seeks actual damages, including but not limited to lost wages and benefits and front pay and benefits.

41. As a result of Defendants' intentional, discriminatory and unlawful acts described above, Plaintiff has suffered and continues to suffer actual damages and compensatory damages including but not limited to mental anguish, humiliation, medical expenses, emotional distress and damage to his professional reputation, all to his detriment and compensable at law.

42. Plaintiff also sues for the recovery of punitive damages as authorized by statute.

43. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this action for preliminary and permanent injunction is the only available means of securing adequate relief. Plaintiff presently suffers and will continue to suffer irreparable injuries from Defendants' policies, practices, customs, and usages set forth herein.

44. The effect, purpose and intent of the policies and practices pursued by Defendants has been and continues to be to limit, classify, and willfully discriminate against employees on the basis of their race, color, national origin and otherwise adversely affect their status as employees because of same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court advance this cause on the docket,

order a speedy trial at the earliest practicable date and cause this case in every way to be expedited and upon such hearing to:

a. Grant Plaintiff a preliminary and permanent injunction enjoining Defendants, their agents and employees and those acts from continuing to maintain the policies, practices, customs or usages which discriminate against Plaintiff because of race, color, national origin or otherwise deprive Plaintiff of his rights and privileges secured by Federal and State Law.

b. Grant Plaintiff a declaratory judgment that the practices, policies, customs and usages complained of herein are violative of his rights protected by Title VII, 42 U.S.C. §1981 and the TCHRA.

c. Order the Defendants to grant Plaintiff additional equitable, actual and compensatory relief, requiring said Defendants to make Plaintiff whole, including but not limited to promotions, back pay and front pay including all accrued interest, insurance benefits, medical expenses, pension benefits, bonuses, vacation benefits, sick leave, and other incidental benefits that attach to and were incidental to Plaintiff's employment with Defendants and incidental to each such position sought by Plaintiff, as authorized by statute.

d. Back pay and benefits.

e. Lost wages.

f. Prejudgment interest and post-judgment interest as allowed by law on back pay and benefits.

g. Front pay and benefits.

h. Order the Defendants to pay Plaintiff compensatory damages for emotional pain and suffering, mental anguish, inconvenience, reputational harm, emotional distress, physical pain and suffering, loss of enjoyment of life, medical expenses and humiliation.

i. Order the Defendants to pay Plaintiff punitive damages.

j. Grant an Order restraining Defendants from any retaliation against Plaintiff for participation in any form in this action.

k. Attorney's fees and costs, including but not limited expert witness fees.

l. Grant Plaintiff his costs incurred herein, and as part of such costs, reasonable Attorneys' fees and Expert witness fees and such further, additional or alternative relief and affirmative action orders as may appear equitable and just.

m. For any other relief this Court deems just and equitable.

Respectfully submitted,

By: /S/ Ashok Bail___________________

**ASHOK BAIL**
**The Bail Law Firm, PLLC**
STAT BAR #24043541
3131 Eastside St., Suite 440
Houston, Texas 77098
(832) 216-6693 (Tel)
(832) 263-0616 (Fax)
ashok@baillawfirm.com

ATTORNEYS FOR PLAINTIFF